UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>GREGORY LOREN HULL and<br>SHONDRA LYNN HULL,<br><br>        Debtors. | Bankruptcy Case<br>No. 17-63283-tmr7 |
| GREGORY LOREN HULL and<br>SHONDRA LYNN HULL<br><br>        Plaintiffs,<br>  v<br><br>KLAMATH COUNTY, a political subdivision<br>of the State of Oregon<br><br>        Defendant. | Adversary Proceeding<br>No. 17-6089-tmr<br><br><br><br>OPINION |

  Plaintiffs, the debtors in the underlying bankruptcy case, brought this action to avoid the transfer of their real property as a preference under 11 U.S.C. § 547(b)[1] or, alternatively, as a fraudulent transfer under § 548(a). At the pretrial conference held on February 28, 2018, the parties agreed to resolve all pending claims on the record after submission of a statement of stipulated facts, agreed exhibits, and trial memoranda. Although Defendant subsequently moved for summary judgment on each of Plaintiff's claims, I treat the

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to Title 11 of the United States Code and to the Federal Rules of Bankruptcy Procedures (FRBP).

OPINION - pg. 1 of 10

motion as a memorandum in support of Defendant's position, in accordance with the discussion and related minute order (Doc. # 10).

Neither party addressed the fraudulent transfer claim in their memoranda, and Plaintiffs' counsel confirmed at the adjourned confirmation hearing held on June 5, 2018, that they will no longer pursue the fraudulent transfer claim. Based on that representation and Plaintiffs' failure to prosecute the claim, I will dismiss Plaintiffs' fraudulent transfer claim with prejudice. In this Opinion, I address whether Plaintiffs prevail on their preference claim.

**FACTS**

The following facts are undisputed as indicated in the Stipulation of Facts (Doc. #12) and related Exhibits (Doc. #13). Plaintiffs purchased real property located at 1435 Oregon Avenue in Klamath Falls, Oregon (the "Property"), on November 1, 1989. The parties agree that, at all relevant times, the fair market value of the Property was between $60,000 and $80,000. Due to Plaintiffs' failure to pay several years' worth of real property taxes, Defendant initiated foreclosure proceedings under Chapter 312 of the Oregon Revised Statutes (ORS) (pertaining to foreclosure of property tax liens). On September 23, 2015, the Klamath County Circuit Court signed a General Judgment; Foreclosure of Tax Liens ("Judgment"), which the clerk subsequently entered on September 28, 2015. Plaintiffs concede that, as to those proceedings, Defendant complied with the statutory mailing and delivery requirements.

On September 9, 2016, Defendant delivered to Plaintiffs the required notice of the two-year period during which they could redeem the Property. The Notice specified that "[i]f the property is not redeemed prior to or by 4 p.m. on September 25, 2017 the property will be deeded to Klamath County immediately after the expiration of the period of redemption expires [sic]." The notice specified that the total amount due by September 25, 2017, was $4,915.78, not including the taxes due for tax year 2016-2017. Plaintiffs did not redeem the Property and, on September 26, 2017, at 8:34 a.m., the County recorded the deed transferring the Property to Defendant. On October 27, 2017, Plaintiffs filed for Chapter 13 bankruptcy relief. Their proposed plan, still not confirmed, provides for the cure of the redemption payment default owing to Defendant over a five-year period. Plaintiffs initiated this adversary proceeding on November 15, 2017.

## DISCUSSION

In seeking to avoid the transfer of the Property, Plaintiffs focus on § 547(b) which provides as follows:

> Except as provided in subsections (c) and (i) of this section, the trustee[2] may avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
>    (A) on or within 90 days before the date of the filing of the petition; or
>    (B) [inapplicable]
> (5) that enables such creditor to receive more than such creditor would receive if–
>    (A) the case were a case under chapter 7 of this title;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(Footnote added.) Section 547(g) allocates the burden of proof to the party seeking avoidance under subsection (b). Section 101(54) defines "transfer" as follows:

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with
>    (i) property; or
>    (ii) an interest in property.

Plaintiffs argue that the expiration of the two-year redemption period on September 25, 2017, and/or the subsequent deed recording on September 26, 2017, constitute a transfer within the meaning of the statute. Defendant argues that the operative transfer occurred upon entry of the Judgment on September 23, 2015 – far outside the 90-day window outlined in § 547(b)(4).

---

[2] Section 522(h) gives debtors the right to pursue avoidance actions under certain circumstances, which appear to be satisfied here. *See Carter v. H&B Jewelry and Loan (In re Carter)*, 209 B.R. 732, 733 (Bankr. D. Or. 1997). Defendant does not dispute Plaintiffs' standing to pursue the preference claim.

OPINION - pg. 3 of 10

*A. Property Interest*

Before analyzing the elements of a preferential transfer claim, I must first examine the nature of the interest at issue. "Property interests are created and defined by state law." *Butner v. U.S.*, 440 U.S. 48, 55 (1979). "The [bankruptcy] code neither creates nor enhances the rights a debtor brings into the bankruptcy estate." *Oregon v. Braker (In re Braker)*, 125 B.R. 798, 801 (9th Cir. BAP 1991). As to interests in Oregon real property following tax foreclosure proceedings, ORS Chapter 312 governs the extent of the parties' rights. Therefore, in order to understand the nature of Plaintiffs' interest in the Property after entry of the Judgment and whether or not the subsequent deed to Defendant constitutes a "transfer" within the meaning of § 547(b), the analysis must start there.

ORS 312.090 provides that a judgment for delinquent property taxes shall be a judgment against and a lien on each parcel of property included therein. Upon delivery to the clerk of a judgment for delinquent taxes, "the certified copy shall constitute a certificate of sale to the county of the [property] described in the judgment . . . ." ORS 312.100. "When a county acquires real property by foreclosure for delinquent taxes, the conveyance vests in the county title to the property." ORS 312.270. "All properties sold to the county under ORS 312.100 . . . shall be held by the county for a period of two years," during which time "any person having an interest in the property at the date of the judgment" may redeem the property. ORS 312.120(1), (2). If redeemed, the property is subject to taxation during the redemption period, "as though it had continued in private ownership." ORS 312.120(3). The sale "does not affect the former owner's right to possession of the property during the period of redemption." ORS 312.180. If the property is not redeemed within the two-year period, it "shall be deeded to the county by the tax collector." ORS 312.200. "All rights of redemption . . . shall terminate on the execution of the deed to the county." *Id*.

Each statutory section above illustrates a consistent intent on the part of the Oregon Legislature to divest property owners of their ownership rights upon the entry of a judgment of foreclosure of tax liens. Indeed, aside from the right to redeem the property, possession during the redemption period remains the only right left to the former owners after judgment. ORS 312.180. *See also In re Pineda-Pineda*, 510 B.R. 648, 650 (Bankr. D. Or. 2014) (expiration of redemption period after filing extended by § 108(b)). Both of

OPINION - pg. 4 of 10

those rights terminate following the expiration of the redemption rights. Therefore, once entered, the Judgment gave title of the Property to Defendant, subject only to Plaintiffs' right to possession and redemption.

*B. Transfer*

Given the extent of the divestment, it is simple to conclude that the Judgment entered September 28, 2015, constitutes a transfer under § 101(54)(D) as an involuntary conveyance of the Property from Plaintiffs to Defendant. But, that is not the end of the inquiry. Plaintiffs argue that their "interest in the Property was transferred to the Defendant when [Plaintiffs'] statutory redemption rights expired on September 25, 2017." COMPLAINT at 2 (Doc. #1; filed 11/15/17). They do not cite any legal authority for the notion that loss of a redemption right constitutes a transfer, nor could I find any.

Rather than a transfer, the redemption rights expire by definition. This interpretation was used by the Wisconsin bankruptcy court, which stated, "when property, real, tangible, or intangible, is transferred, the property itself is not transformed by the exchange. The termination of the right to perform . . . differs from a transfer of property in this sense: the rights terminated, unlike property, are transformed." *Creditors' Comm. v. Jermoo's, Inc. (In re Jermoo's, Inc.)*, 38 B.R. 197, 204 (Bankr. W.D. Wisc. 1984) (franchise agreement terminated by passage of time). Adopting *Jermoo's* rationale regarding the expiration of an option to purchase real property, another bankruptcy court ruled that the debtor "could have exercised the option prior to its expiration . . . , but did not; and when the option lapsed, the right simply disappeared. It was not transferred." *Edgewater Med. Ctr. v. Edgewater Prop. Co. (In re Edgewater Med. Ctr.)*, 373 B.R. 845, 853 (Bankr. N.D. Ill. 2007). Expiration of a redemption right is analogous to the expiration of an option. Under both scenarios, the right simply disappears. It is not transferred.

Plaintiffs also argue that the September 26, 2017, deed constitutes a transfer subject to avoidance under § 547(b). Under certain circumstances, there may be multiple transfers relevant to an avoidable transfer claim. Judge Perris found two transfers in a case in which the debtor sought to avoid as a fraudulent transfer the forfeiture of jewelry pawned to defendant pawnbroker. *Carter*, 209 B.R. at 734. The first occurred when the debtor pawned the jewelry; the second occurred when she lost the right to redeem it by

OPINION - pg. 5 of 10

failing to pay the amount due. *Id*. As to the second transfer, the court reasoned that "a debtor's right to redeem personal property from a pawnbroker fits within the statutory definition of transfer, because the loss of that right to redeem is analogous to a foreclosure of the debtor's equity of redemption [under § 101(54)(C)]." *Id*.

An examination of the relevant statutes shows the significant difference in the pawn situation. When an individual pawns personal property, the pawnbroker has a first lien on the property for the amount of the loan. ORS 726.380(6). The property may be redeemed and the loan repaid any time before the loan period expires (usually in 60 days). ORS 726.400(1). The property is forfeited if not redeemed within the required period, and the pawnbroker acquires the original owner's title and interest in the property along with the right to hold and dispose of it. ORS 726.400(7). Forfeiture, thus, simultaneously transfers title of the pawned property and terminates the right to redeem. As such, termination of the redemption right is "analogous" to foreclosure of a debtor's equity of redemption in the mortgage context. *Carter*, 209 B.R. at 734.

With real property, however, Oregon does not subscribe to the title theory of mortgages (mortgagee given legal title); rather, it adopted the "lien theory," which only gives the lender a lien on the property, while the mortgagor retains legal title. *Land Associates, Inc. v. Becker*, 294 Or. 308, 312 (1982). As the Oregon Supreme Court explains:

> Most states, including Oregon, that adopted a lien theory of mortgage also enacted statutory redemption as an additional remedy. The period for statutory redemption starts after the foreclosure and sale itself and is one last chance for the previous owner and any lien creditors to regain the property. *It is important to distinguish the two types of redemption–equitable redemption only exists until the interest is foreclosed, while statutory redemption only begins after the interest is foreclosed.*

*Id*. at 312-13 (footnote omitted; emphasis added).

Although mortgage liens and related redemption rights are not directly at issue in this case or in *Carter*, the *Land Associates* distinction between equitable and statutory redemption provides clarity for bankruptcy courts analyzing redemption rights. In *Carter*, Judge Perris's likening of forfeiture of the right to redeem pawned property to foreclosure of a debtor's equity of redemption is consistent with *Land Associates* and with Oregon statutes governing pawned property. In this case, as between Plaintiffs and Defendant,

OPINION - pg. 6 of 10

Plaintiffs never had an equitable right of redemption. Their right to redeem was a statutory right provided by ORS 312.120(2) and triggered upon entry of the Judgment. Although Plaintiff's right to redeem the Property terminated on September 25, 2017, it did so due to the passage of time, not by any affirmative act on Defendant's part. Indeed, the foreclosure had already occurred two years prior. As such, neither the lapse of the statutory redemption period nor the subsequent deed to the county constitute a foreclosure of an equity of redemption under § 101(54)(C).

In arguing that the deed constitutes a transfer of an interest in property, Plaintiffs rely primarily on § 101(54)(D). In Oregon, "when used in the context of property law, 'interest' commonly encompasses both ownership and possessory interests, and typically includes interests beyond those established by a landlord-tenant relationship." *Bank of America, NA v. Wilson*, 276 Or.App. 268, 244 (2016). The question is what interest did Plaintiffs have on the morning of September 26, 2017, moments before the deed was recorded? Plaintiffs assert that they held the title on the home. That is not correct. The Judgment vested title in Defendant in 2015 pursuant to ORS 312.270. On September 26, 2017, before the deed was recorded, Plaintiffs held no "property or interest in property." As such, the recording of the deed, by itself, is not a transfer under § 101(54)(D).

This outcome is consistent with the policy of maintaining the stability of real property titles. "[T]he general welfare of society is involved in the security of titles to real estate and the power to ensure that security inheres in the very nature of state government." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (internal citations omitted). Where there is no clear and manifest intent by Congress to displace traditional state legislation with provisions in the Bankruptcy Code, the Code "will be construed to adopt, rather than to displace, pre-existing state law." *Id.* at 544-545. The Oregon legislature states that "[w]hen a county has acquired or hereafter acquires real property by foreclosure for delinquent taxes, the county's title to the property shall have the utmost stability." ORS 312.214(1). State law specifies that any action to determine the validity of a sale to the county for delinquent taxes or to recover possession of the property must be brought within two years from the date of the judgment of foreclosure and sale. ORS 312.230(1). Thus, a bankruptcy court ruling that allowed for avoidance of a deed recorded pursuant to ORS 312.200

OPINION - pg. 7 of 10

simply because the recording occurred within the 90-day period of § 547(b) would be inconsistent with Oregon law regarding perfection of judgment liens and would inappropriately extend the two-year period in which Oregon allows for challenges to the judgment of foreclosure.

The only case cited by Plaintiffs, *In re Hackler*, is distinguishable for several reasons, and also reflects the same policy considerations that have guided my analysis. *Hackler* is a New Jersey bankruptcy case analyzing the intersection of § 547(b) and New Jersey tax foreclosure law. 571 B.R. 662, 668 (Bankr. D. N.J. 2017). The debtors sought to avoid as a preference a judgment of foreclosure of a tax lien entered only two months before they filed their bankruptcy case and avoidance complaint. *Id*. at 664. In avoiding the foreclosure as a preference, the court reasoned that the 90-day period outlined in § 547(b)(4) did not conflict with the three month period provided under New Jersey law in which a tax sale foreclosure judgment may be challenged. *Id*. at 668. The court took care to state that "[a]pplication of preference law does not extend the time in which a tax sale judgment can be challenged any longer than that already contemplated by state law. There is no creation of an additional cloud on title so as to frustrate or conflict with [sic] statute." *Id*. In addition to the clear factual and state law distinctions between *Hackler* and this case, the policy considerations outlined by the *Hackler* court cut against the outcome that Plaintiffs seek: an extension of the two-year period to challenge the judgment of foreclosure and redeem the Property. Such an outcome would conflict with Oregon law, create a cloud on the title, and raise the federalism concerns that *BFP* instructs us to avoid.

### *C. Perfection*

Although the parties do not discuss § 547(e), the preferential transfer analysis is not complete without determining when Defendant's interest in the Property was perfected. Section 547(e) provides:

> (1) For purposes of this section–
>> (A) a transfer of real property . . . is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such a transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and
>> (B) [inapplicable]
>
> (2) for the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made–
>> (A) [inapplicable]

OPINION - pg. 8 of 10

(B) at the time such transfer is perfected, if such transfer is perfected after such 30 days . . . . In other words, even though the Judgment effectively conveyed Plaintiff's interest in the Property to Defendant in 2015, a "transfer" for § 547 purposes did not occur until Defendant perfected its interest. The question then becomes: when did Defendant perfect its interest in the Property? "Perfection is judged by whether a subsequent bona fide purchaser from [Plaintiffs] could have taken priority over the transferee's title. Determining what is necessary to perfect a transfer of an interest in real property depends entirely on state law." *Grover v. Gulino (In re Gulino)*, 779 F.2d 546, 550 (9th Cir. 1985).

In Oregon, a bona fide purchaser (BFP) is one who purchases in good faith, for valuable consideration, and who first records her interest in the county records. ORS 93.640(1). Every conveyance of real property that is not recorded is void as against a BFP whose conveyance is recorded first. *Id*. The interest of a judgment lien creditor in real property is superior to that of a BFP if the judgment with lien effect is entered before a BFP records her interest. ORS 18.165(1)(a). As discussed earlier, Oregon law provides Defendant with a lien for the unpaid taxes and title to the Property upon recording of the Judgment. *See* ORS 312.100. Thus, entry of the certified copy of the Judgment into the court registry on September 28, 2015, was sufficient to perfect the interest by operation of ORS 18.165 and ORS 312.100. Therefore, pursuant to § 547(e), the date of transfer was September 28, 2015. This is outside the 90-day period prescribed by § 547(b)(4), which makes the transfer not avoidable.

Because the transfer did not occur within the 90 days before Plaintiffs filed their bankruptcy petition, it is not necessary to address the other elements of a preferential transfer claim.

## CONCLUSION

Plaintiffs are correct in one important aspect: through the tax foreclosure process, Defendant acquired title to property with a value that exceeds the amount of debt owed against it. That is unfortunate for Plaintiffs and ultimately their creditors, but Oregon law and the Bankruptcy Code define and limit the parties' rights. Here, the operative transfer occurred in September 2015. It was then that the Property was sold, title was transferred, and Defendant's interest was perfected. The fact that the 2015 transfer may enable Defendant to receive more than it was owed does not change the legal landscape or the parties' respective

rights so late in the game. By the time the deed was recorded in 2017, Plaintiffs had already lost all rights to the Property. The transfer was outside the 90-day preference period and is not avoidable as a preference.

For the reasons outlined above, I find that Plaintiffs have not met their burden of proof on the claim for avoidance under § 547(b). Judgment will be entered dismissing Plaintiffs complaint with prejudice. This Opinion constitutes my findings of fact and conclusions of law under FRBP 7052. They will not be separately stated.

*signature*

THOMAS M. RENN
Bankruptcy Judge